IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TOMMY LEE LANKFORD, JR., | : | |
| Plaintiff, | : | |
| vs. | : | CA 20-0228-MU |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tommy Lee Lankford, Jr. brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 19 (order of reference)). Upon consideration of the administrative record, Plaintiff's brief, and the

Commissioner's brief,[1] the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I. Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on or about September 28, 2017, alleging disability beginning on December 16, 2016. (*See* Doc. 13, PageID. 218-27). Lankford's claims were initially denied on December 20, 2017 (*id.,* PageID. 149-61) and, following Plaintiff's January 4, 2018 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 165-66), a hearing was conducted before an ALJ on March 7, 2019 (*id.,* PageID. 85-107). On May 20, 2019, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 67-75). More specifically, the ALJ determined at the fourth step of the five-step sequential evaluation process that Lankford retains the residual functional capacity to perform light work and, therefore, his past relevant work as a federal screener. (*see id.,* PageID. 70-74; *compare id. with* PageID. 102-03). On May 24, 2019, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 215-17); the Appeals Council denied Lankford's request for review on February 21, 2020 (*id.,* PageID. 55-57). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[1] The parties waived oral argument. (*See* Docs. 17 & 20).

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to degenerative disc disease, arthritis, and peripheral neuropathy. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.    The claimant has the following severe impairments: degenerative disc disease, arthritis, and peripheral neuropathy (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently use the right upper extremity and left lower extremity for pushing and pulling; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes or scaffolds.**
>
> . . .
>
> **6.    The claimant is capable of performing past relevant work as a federal screener. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**
>
> . . .
>
> **7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Doc. 13, PageID. 69, 70 73 & 74 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Lankford asserts two reasons the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in finding he can perform the prolonged standing and walking required of light work; and (2) the ALJ erred in omitting from his RFC determination certain limitations indicated by Dr. Alton James. Given that both of Plaintiff's assignments of

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

error related to the ALJ's RFC determination, the undersigned considers these errors under the RFC assessment umbrella.

**A.     ALJ's RFC Determination and His Consideration of the Opinion of Non-Examining Physician Dr. Alton James**.  Plaintiff attacks the ALJ's RFC determination, and ultimate decision of non-disability, by arguing that the ALJ erred in finding he can perform the prolonged standing and walking required of light work and further erred in omitting from his RFC determination (and his hypothetical to the vocational expert) certain limitations indicated by Dr. James.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Sec. Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or

environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting
(Continued)

7

substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)).

In this case, the Court finds that the ALJ linked his RFC assessment—that is, a range of light work with limitations—to specific evidence in the record bearing upon Lankford's ability to perform the physical, mental, sensory and other requirements of work. (*Compare* Doc. 13, PageID. 70 *with generally* PageID. 128-133, 272-93 & 342-85). The ALJ explained in some detail how the medical evidence of record supported the components of his RFC determination (*see id.*, PageID. 71-73; *compare id. with*

---

*Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

PageID. 70) and, in particular, the Court observes that the ALJ's RFC determination is consistent with objective testing (*compare id. with id.,* PageID. 354-57 (December 12, 2017 x-rays revealed mild C3-4 degenerative disc disease, while x-rays on August 7, 2018, revealed degenerative disc disease and degenerative facet disease of the L-spine, bilateral medial joint space narrowing of the knees, and degenerative disc disease of the C-spine)) and objective examination findings of record (*compare id. with id.,* PageID. 342-35 (emergency room visit by Lankford on December 1, 2016, for hand and neck pain after moving furniture; though there was local paraspinous tenderness of the neck with associate muscle spasm exacerbated by neck movements, there was full ROM of the cervical spine, motor exam was normal, and, importantly, there was full range of motion in all extremities with no extremity edema, he ambulated without difficulty, and was noted to have only moderate neck pain); PageID. 353 (examination by Dr. Becker, on December 12, 2017, revealed decreased range of motion of the C-spine, some diminished hand grip strength on the right with diminished sensation in the first two digits of that hand and mildly decreased abduction of the right shoulder, and while there was some mildly decreased range of motion of the bilateral knees with mild crepitance he otherwise had good stability of the knees, and, finally, while anterior thoracolumbar flexion was 0-80 degrees in the supine position, he refused to attempt bending forward and other movements); PageID. 360 (VA examination on November 8, 2018, revealed Plaintiff's subjective comment that his back pain had improved with physical therapy and that he had no complaints other than a request to have his eyes and ears checked and to see an "ENT" about chronic sinus congestion; physical examination produced no findings of note and it was observed that Lankford was in no

apparent distress and walked with a normal gait); PageID. 363 (examining nurse on November 8, 2018 noted Plaintiff ambulated without assistance, reported a pain level of 0/10, and was in no distress); PageID. 380 (on August 7, 2018, observation made by a nurse during Lankford's scheduled VA clinic visit that he ambulated without assistance and had no complaints of pain); PageID. 382 (examining VA physician on August 7, 2018 noted Lankford was in no apparent distress, found no ankle edema, found no cervical, axillary or "supraclav" adenopathy, and noted a normal gait with no motor deficits); PageID. 384 (June 29, 2018 notation by nurse that Lankford walked into the VA clinic with no complaints of pain).[6] The foregoing predominantly normal objective findings, combined with the conservative (and infrequent) treatment of Plaintiff's back, neck, knee, and left foot pain—back brace, with no prescribed pain medications, as Plaintiff got relief with over-the-counter Advil, etc.—are consistent with and provide substantial support for the ALJ's RFC determination. Moreover, the ALJ's RFC findings are entirely consistent with Plaintiff's reported daily activities. (*See id.,* PageID. 274-81 & 284-93 *(*functional reports completed both by Lankford and a close personal friend, Sylvia Swinton, reflect that Plaintiff has no problem with personal care—*e.g.,* dressing, shaving, using the bathroom, etc.; he can perform normal household chores—like sweeping, dusting, cleaning, and laundry—and household repairs; he can walk and exercise from time to time; he can make sandwiches and frozen meals, with the only apparent barrier to cooking more complete meals being his lack of electricity; he can shop for sandwich meats, fruits and vegetables; he drives short distances, when he has

---

[6] In short, the objective medical evidence of record simply does not "flag" any reason why Lankford would be unable to perform the walking and standing required of light work.

a car; and he enjoys watching television, reading, going to church, and socializing in-person and over-the-phone with family and friends); *compare id. with* PageID. 351-52 (Dr. Eric Becker's report of examination reflects that Plaintiff reported he can attend to the activities of daily living, like dressing and bathing, he tries to perform light house chores, and TV is his hobby)). And, finally, the RFC findings of non-examiner Dr. Alston James support the ALJ's RFC determination that Lankford can perform the standing and walking required of light work. (*See* Doc. 13, PageID. 77 (finding that Plaintiff can stand and/or walk about 6 hours in an 8-hour workday)).[7]

To the extent Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Becker related to Plaintiff's functional limitations (*see* Doc. 14, PageID. 393-95), this Court disagrees because Dr. Becker offered no such opinions. According to Plaintiff, Dr. Becker identified functional limitations in his consultative examination report. (*Compare id. with* Doc. 13, PageID. 352 ("Physical Abilities")). However, it simply cannot be gainsaid that the functional limitations under "Physical Abilities" that appear on the first page of Dr. Becker's report consist of nothing more than Lankford's own description of his purported physical abilities, not the doctor's findings, because this description comes as a summary before Dr. Becker conducts a Review of Systems and performs his

---

[7] The Court finds that the ALJ articulated a sufficient basis for finding Dr. James' opinion persuasive (*see id.,* PageID. 72 ("This opinion is persuasive because it is generally consistent with the record as a whole, including the findings from examination and testing, the type and amount of treatment the claimant has received, and the claimant's reported activities.")). *See Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency. . . . Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." (footnotes omitted)).

Physical Examination. (*See id.,* PageID. 352-53). Indeed, no reader of Dr. Becker's report would not understand the "Physical Abilities" section as Plaintiff's own report of his physical abilities since the few objective findings relative to Plaintiff's knees and low back noted by Dr. Becker—that is, mild decreased range of motion of the knees with mild crepitance but otherwise good stability, antalgic ambulation favoring the left, and anterior thoracolumbar flexion was 0-80 degrees in the supine position but he refused to perform other movements (*id.,* PageID. 353)—would not account for an ability to walk only 15 feet and stand less than 10 minutes listed in the "Physical Abilities" section (*see id.,* PageID. 352). Accordingly, the Court finds no reversable error in this regard because Dr. Becker offered no opinions regarding Plaintiff's functional limitations. Moreover, to the extent the ALJ mistakenly referred to Dr. Becker's observations/findings as an "opinion" (*compare* Doc. 15, PageID. 408 *with* Doc. 13, PageID. 72), any such error was harmless because the ALJ correctly noted that Dr. Becker did not identify any specific functional limitations and the ALJ's mistaken reference did not affect the outcome of the decision. As reflected above, even the minimal objective findings Dr. Becker made respecting Plaintiff's knees and back are not inconsistent with the ALJ's finding that Lankford can perform the standing and walking requirements of light work. However, even if those findings were inconsistent with the ALJ's RFC determination and somehow constitute an "opinion," any implicit rejection of those findings by the ALJ would not be cause for reversal both because, as the ALJ explicitly stated, Dr. Becker "did not specify any functional limitations" (Doc. 13, PageID. 72) and also because the consultative examiner's objective findings are certainly not consistent with VA records subsequent to Dr. Becker's December 12, 2017

examination of Lankford (*see id.,* PageID. 360 (on November 8, 2018, Plaintiff presented for a checkup with no pain complaints; he was noted by the examining physician to be in no apparent distress and walking with a normal gait); PageID. 309 & 311 (nurse assessing Lankford on November 8, 2018, noted he ambulated without assistance, his pain level was 0/10 and he was in no apparent distress); PageID. 380 (nurse's note on August 7, 2018, that Lankford ambulated without assistance and voiced no complaints of pain); PageID. 382 (physical examination by physician on August 7, 2018, revealed a normal gait and no motor deficits); PageID. 384 (June 29, 2018 notation by examining nurse that Plaintiff walked into the VA without assistance and with no complaints of pain). *Cf. Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a). The most important factors to be considered are those of supportability and consistency, and the persuasiveness of any medical opinion or administrative finding is considered in light of those two factors.").

      Plaintiff's final assignment of error is that the ALJ erred in omitting from his RFC determination certain limitations specifically noted by Dr. James, namely, concentrated exposure to noise and vibration. (*See* Doc. 14, PageID. 397; *compare id. with* Doc. 13, PageID. 133 (James' findings that Lankford should avoid concentrated exposure to noise and vibration)). Plaintiff contends that given that the ALJ found Dr. James' opinion persuasive, he should have included the foregoing noise and vibration limitations in his

RFC determination and in his hypothetical to the vocational expert ("VE") and, further, that had these limitations been included the VE's testimony likely would have eliminated Plaintiff's past work as a federal screener as a job available to Plaintiff since the D.O.T. identifies that job as requiring frequent talking and hearing and has a noise intensity level of moderate. (*See* Doc. 14, PageID. 398). This Court, however, agrees with the Defendant that the ALJ's failure to include Dr. James' limitations precluding "concentrated exposure to noise and vibrations" in his RFC determination and in his hypothetical to the VE is, at most, harmless error because Plaintiff simply has not established that his past relevant work as a federal screener/airline security representative required concentrated exposure to noise and vibration. Indeed, the definition of this work in the Dictional of Occupational Titles, § 372.667-010, reveals that vibration, as a condition or activity, does not exist and the noise level is Level 3, or a moderate noise level. Accordingly, no reversible error exists. *Cf. Jones v. Commissioner of Social Sec.,* 492 Fed.Appx. 70, 73 (11th Cir. Oct. 12, 2012) (finding the ALJ's failure to include driving limitation in the hypothetical posed to the VE was harmless because the functional requirements of the jobs identified by the VE did not appear to involve driving and Plaintiff made no argument that the essential function of any of these jobs included driving).

In light of the foregoing and because Plaintiff raises no other issues, the Commissioner's fourth-step determination is due to be affirmed. *Compare Land v. Commissioner of Social Sec.,* 494 Fed.Appx. 47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both

physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips, supra,* 357 F.3d at 1238-1239 ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 5th day of March, 2021.

                                     s/P. Bradley Murray
                                     **UNITED STATES MAGISTRATE JUDGE**